114

Erle Pettus, of Birmingham, Ala., for appellant.

Jim C. Smith, U. S. Atty., of Birmingham, Ala.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

*Rehearing denied July 13, 1936.

HOLMES, Circuit Judge.

The appellant, his wife, and three others were indicted for violations of the Liquor Taxing Act of 1934 (48 Stat. 313), and section 37 of the Federal Penal Code of 1910 (18 U.S.C.A. § 88). The first two counts of the indictment are, respectively, for possession and transportation of tax-unpaid intoxicating liquor; the third and fourth counts for carrying on the business of retail and wholesale liquor dealers without first paying the special tax required by law; the fifth for a conspiracy to violate the federal laws with reference to the possession, transportation, manufacture, and sale of tax-unpaid intoxicating liquors. All of the defendants were convicted upon counts 1, 2, 4, and 5, except Mrs. Mattie Johnson, appellant's wife, who was convicted only upon counts 4 and 5. James B. Johnson is the sole appellant, the other defendants not having appealed.

The case was made out by the direct testimony of several government agents, whose evidence was accepted by the jury, and many of the facts testified to by them were admitted by the several defendants, all of whom took the stand as witnesses in their own behalf and in behalf of each other.

By the verdict of the jury it is established that appellant, assisted by his wife, two white men (defendants Lee and Hughes), and a negro (defendant Brown), was engaged in the wholesale liquor business at Johnson's Camp on Warrior river in Jefferson county, Ala. Nine illicit stills had been found immediately east of Hale's Camp, a fishing place formerly rented by the appellant. Two of the stills, very large ones, just across the river, had been destroyed by agents of the Alcohol Tax Unit on August 3, 1934. Appellant admitted that he had lived at Johnson's Camp for about four years, leasing it from a Mr. Umber, and further admitted that he had leased Hale's Camp from the same man about two years after going to Johnson's Camp. About a year before the trial, appellant had been convicted, under the State Prohibition Law, for the illegal possession of tax-unpaid beer. Thereafter, he was wary, stating to Barlow, an agent of the Alcohol Tax Unit, whom appellant thought was named Jackson and a prospective liquor purchaser, that the way to transport whisky was to put vegetables on top of the load and bring it into town

as a load of vegetables. He also stated that he had been caught once by federal men, and did not intend to get caught any more; that he would make no more trails, and was going to have men do the work for him.

In appellant's absence, about noon on April 22, 1935, his wife made the contract for the sale of 300 gallons of whisky, 100 white at $1.25 per gallon and 200 red at $2 per gallon. The delivery of 260 gallons, largely in 30 and 50 gallon barrels, was made that night by defendants Johnson, Hughes, Lee, and Brown. After the whisky (some of it still warm) had been transported from illicit distilleries across Warrior river to the Jefferson county side, the purchasers, who were eyewitnesses to the transaction, revealed their identity as officers and arrested all of the defendants except Mrs. Johnson, who was not present, taking them to jail. It was shown that the whisky was what is known as "moonshine," and that the containers did not have stamps affixed thereto.

We think there was substantial evidence under each count to support the verdict, and therefore the request for a peremptory instruction of not guilty was properly refused. Crumpton v. United States, 138 U.S. 361, 11 S.Ct. 355, 34 L.Ed. 958; Moore v. United States, 150 U.S. 57, 14 S.Ct. 26, 37 L.Ed. 996; Humes v. United States, 170 U.S. 210, 18 S.Ct. 602, 42 L.Ed. 1011; Riddle v. United States (C.C.A.5) 279 F. 216; Dean v. United States (C.C.A.5) 246 F. 568.

To sustain a conviction under the fourth count, that of a wholesale liquor dealer, it is not necessary that the evidence should show more than a single sale where, as here, there are corroborating circumstances tending to show that the defendant was engaged as a dealer in the wholesale liquor business. Sodini v. United States (C.C.A.6) 261 F. 913; Bailey v. United States (C.C.A.6) 259 F. 88.

Error is assigned to that portion of the court's charge which told the jury there was no dispute about the overt act, "because Johnson stood there and watched them carry the liquor across the slough." This instruction had reference solely to the conspiracy charge set forth in count 5, and referred solely to the overt act necessary to complete the crime of conspiracy. The court had previously instructed the jury fairly and fully upon the unlawful agreement to commit the substantive violation which is a necessary ingredient of the offense, and had explained to them that this must be followed by an overt act intended to carry the agreement into effect. The court did not err in charging the jury that if the unlawful agreement existed there was no dispute about the overt act. If a fact in evidence clearly appears and is undisputed, there is no reason why the court should not so state to the jury.

We find no reversible error in the record, and the judgment is affirmed.