### KNIGHT v. UNITED STATES.
#### No. 10000.

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1941.

Rehearing Denied Jan. 12, 1942.

No appearance was entered for appellant.

Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., and Wm. P. Fonville, Asst. U. S. Atty., of Dallas, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Winter Knight was tried and convicted on five counts of an indictment charging violations of the mail fraud statute, 18 U.S.C.A. § 338, and was sentenced generally to serve a term of eighteen months imprisonment and pay a fine of one thousand dollars. From the judgment and sentence entered he has appealed.

Knight is here contending that the court below erred in overruling his motion for a peremptory instruction of not guilty; in excluding and refusing to admit certain evidence offered by him; in charging the jury; and in failing to give three specially requested charges.

The lengthy record of the five-day trial discloses that Winter Knight was working under contract for Sinclair Refining Company as its bulk sales agent at Tahoka, Texas. He was charged with the duty of receiving and selling oils, lubricants, and other products supplied to him by Sinclair. The products remained the property of Sinclair until they were sold, and Knight was under duty to collect for all such products sold by him and immediately account to Sinclair for the moneys so received. It was the further duty of Knight to make three weekly reports to Sinclair; each report to show a record of all sales, collections, and deposits made up to the time of such report.

The period of time covered by the proof in the case was from January 1, 1940, to September 25, 1940. It was shown that during this period of time Knight made a practice of selling Sinclair's products and depositing the money in the bank in his own name; that he commenced and continued to fall behind with the sales payments or remittances to the company; that he would sell to customers for cash and, after depositing the money in the bank in his own name, would falsely report to the company that the sales had been made on credit; that he would from time to time make payments which purported to cover other and different sales for which he owed; that he would order his bookkeeper to make out reports to the company, which reports were false, and which he admitted to be false; and that he continued the practice of mailing false reports to the company, and thereby secured shipments of additional products to him until his shortages and defalcations reached such a large sum that he was no longer able to cover and hide them with his false reports.

When an auditor of Sinclair Refining Company made an audit of his accounts on August 28, 1940, it was discovered that Knight was behind in his accounts, and that he had made collections which he had failed to report. When confronted with the fact that his fraudulent practice had been discovered, Knight admitted the concealed shortages, aggregating $4,638, and acknowledged that these amounts were in all things correct. He further admitted on the witness stand that he had made the false reports, and that they had been mailed to Sinclair by him or at his direction. It is not now disputed that he was able to secure additional products from Sinclair by mailing such false documents to the company. Moreover, after the audit, defendant gave to Sinclair a list of customers who had bought and paid cash for Sinclair products, and who had been reported as having made such purchases on credit. Many of these customers testified that they had paid cash for such products, and Sinclair gave credit to them for the several amounts of money defendant had taken and converted to his own use.

Appellant contends that when he mailed the false reports he did not have the intent to embezzle moneys belonging to Sinclair or to in any manner defraud that company. At the trial he was permitted to offer evidence taking a wide range, and to the effect that agents of Sinclair knew he was selling products to farmers and charging them as sales to gins so that he could procure a lower price; that the agents knew he was making false reports; and that while such agents did not instruct him to make such reports, they knew of his practice. The agents named by him expressly denied his testimony in this regard.

■ Finally, the court refused to permit Knight to testify that he had an independent contract with Sinclair for the hauling of its products; that it had failed to pay him the full amount agreed upon for such services; and that he was making false reports, securing products, selling them, and withholding the money so that he could secure payment for such contract hauling. This offered evidence was nothing more than an effort to excuse and justify the fraudulent and felonious acts of the defendant. Clearly, it was not relevant. The indictment was under the mail fraud statute and in substance charged that the defendant devised a scheme and artifice for obtaining money and property by means of false and fraudulent pretenses and representations, and used the mails to execute it. The devising of the scheme, the false pretenses and representations, and the use of the mails to carry them and thus execute the scheme, were specifically established, indeed admitted. These facts proven or admitted, the case under the indictment was completely made out. Knight's self-justification, his purpose or motive ulterior to the use of the mails to obtain the money by false and fraudulent pretenses and representations, his counter claims or defenses to a civil action for the money thus obtained, would not be a defense to the indictment. Such evidence would be wholly irrelevant. We need not determine whether the matters defendant sought to offer would be admissible in defense if he were sued for the money, or if he were indicted in the State court for swindling. We need only determine, as we do, that they were not relevant as a defense to the indictment brought in this case.

■ The contention touching the court's charge and the refusal to give the specially requested charges is without merit. A court is not required to charge the jury in any particular form of words, and it is not necessary for the charge given to be framed in words suitable to counsel. We have examined the court's charge and found that it fairly stated the law applicable to the case, and that it was, in fact, altogether favorable to the appellant. This is all that is or can be required, and the court committed no error in refusing to give the requested charges. Coffin v. United States, 162 U.S. 664, 674, 16 S.Ct. 943, 40 L.Ed. 1109; Schackow v. Government of Canal Zone, 5 Cir., 108 F.2d 625.

■ The evidence made a case for the jury and the court properly refused to direct a verdict of not guilty.

We find no reversible error in the record. The judgment is affirmed.