**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Albert PEREZ, Defendant-Appellant.**

**No. 504, Docket 82–1262.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 22, 1982.

Decided Jan. 24, 1983.*

Filed Feb. 22, 1983.

Certiorari Denied June 6, 1983.
See 103 S.Ct. 2457.

---

3. See footnote 2.

* This appeal, originally heard on November 22, 1982, was decided by summary order dated January 24, 1983. As such, it had no precedential value under our Local Rule § 0.23. Having construed appellant's petition for rehearing as a request, in part, for the January 24 order to be published, we have decided to publish it. *See O'Hara v. Long Island Railroad,* 665 F.2d 8 (2d Cir.1981).

34

Mark F. Pomerantz, Sp. Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City) for plaintiff-appellee.

Alan M. Dershowitz, Cambridge, Mass. (Goldberger, Feldman, Dubin, & Weisenfeld, P.C., New York City, Nathan Z. Dershowitz, New York City, of counsel) for defendant-appellant.

Before WATERMAN, PIERCE and WINTER, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of conviction in the United States District Court for the Southern District of New York entered after a three-day jury trial before Judge Milton Pollack.

On September 20, 1973, appellant was indicted as a member of a conspiracy involving twelve named and various unnamed co-conspirators engaged in a scheme to distribute narcotics in violation of 21 U.S.C. § 841(a)(1). The named defendants included, among others, Vincent Pacelli, Jr., Alfred Catino, a/k/a "Herbie," Al Bracer, Albert Perez, a/k/a Abbe Perez, Edgardo Ramirez, and John Fazzalari, a/k/a "Fuzzy." Others named as co-conspirators, but not as defendants, included Herbert Sperling and Barry Lipsky.

Perez was not arrested with the other conspirators because he had fled the country in the latter part of 1972. He was not arrested for his role in the conspiracy until April 13, 1979, in Scottsdale, Arizona. On April 16, 1979, Perez was removed to New York to face the narcotics charges lodged against him in the 1973 indictment. Prior to trial he again fled the authorities, and a separate indictment charging bail jumping was filed on December 27, 1979, pursuant to 18 U.S.C. § 3150. Perez eluded apprehension until March 10, 1982, when he was rearrested in New York City. He was tried before a jury on the narcotics and bail jumping indictments from May 17 through May 19, 1982.

At trial, the government introduced evidence of a narcotics conspiracy involving Perez and two other principal partners, Vincent Pacelli and Al Bracer. Also presented was the testimony of co-conspirator Barry Lipsky who testified, *inter alia,* to an out-of-court declaration in which Pacelli told him that "he [Pacelli] had just formed a partnership with Abbe Perez and Al Bracer...." (Tr. 37). Further, Lipsky testified concerning his participation in conversations with Pacelli and Perez in which the three men discussed their narcotics transactions. (Tr. 58–59).

Other evidence presented by the government regarding Perez' involvement in the conspiracy included testimony by narcotics agents, Joseph Salvemini and Gerald Smith, about their observations of Perez during the pertinent period. In addition, Perez' former girlfriend, Emily Flores, testified that numerous meetings took place at their apartment at which Pacelli, Lipsky, Bracer and Perez were present.

At the termination of the jury trial, appellant was convicted of conspiracy to distribute narcotics in violation of 21 U.S.C. § 841(a)(1). Appellant was also convicted of failing to appear for trial in violation of 18 U.S.C. § 3150.

On appeal from the former, Perez contends that Lipsky's testimony as to the conversation between Pacelli and Lipsky, which implicated Perez as a partner in the drug conspiracy, was inadmissible hearsay and that its admission violated Perez' right of confrontation. Since we find the statement admissible under the co-conspirator's hearsay exception, Fed.R.Evid. 801(d)(2)(E), we reject appellant's contentions and affirm the judgment of conviction.

The law in this circuit regarding the admissibility of declarations made by co-conspirators is set forth in *United States v. Geaney,* 417 F.2d 1116 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). In *Geaney,* Judge Friendly wrote:

> [w]hile the practicalities of a conspiracy trial may require that hearsay be admitted "subject to connection," the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.

*Id.* at 1120. Thus, a *Geaney* finding as to the existence of a conspiratorial relationship between the declarant and the defendant must be shown *aliunde* of the hearsay statement itself. *See also United States v. Ziegler,* 583 F.2d 77, 79–80 (2d Cir.1978); *United States v. Mangan,* 575 F.2d 32, 42 (2d Cir.), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978).

Appellant argues that Lipsky's inadmissible hearsay testimony was the only proof linking Perez to the conspiracy. Therefore, he contends, there was no independent evi-

dence to support admission of Lipsky's testimony.

■ Contrary to appellant's assertion, we find the record replete with direct and corroborative evidence, independent of Lipsky's hearsay testimony, which links Perez to the conspiracy charged. Amid Lipsky's non-hearsay testimony is his statement that he, Perez and Pacelli met frequently to handle the affairs of the drug business (Tr. 58–59); that he saw Perez present when money from narcotics sales was counted at Marge Jackalone's apartment (Tr. 67–68); that he saw Perez present at the 118th Street apartment of Frank Bassi, Jr., when money from narcotics sales was counted (Tr. 70); that he, Perez and Pacelli drove to the Jack-in-the-Box restaurant in the Bronx on more than one occasion to pick up cocaine (Tr. 73–74); that on one occasion, he and Pacelli went to Second Avenue and 115th Street to "borrow" dilutant from Perez, "Skinny Herbie" and "Fuzzie" (Tr. 81–82); that he was told to make up thin polyethylene bags of cocaine so that they might be sewn into Perez' jacket for Perez' trip to Spain, and did so (Tr. 84–86); that he saw Perez present when two women altered Perez' jacket to accommodate the bags of cocaine (Tr. 86); that on more than one occasion he and Pacelli went to the L & A Sporting Goods store, jointly owned by Perez, Pacelli and Nick Lugo, and talked to Perez about the operations of the drug business (Tr. 95); that on one occasion, he drove with Perez to meet co-conspirators Edgardo Ramirez and Jack and Eddie Bless, the latter two being persons to whom the partnership sold cocaine and from whom they received heroin (Tr. 113); that on that same occasion he saw Jack Bless hand an object to Perez shortly before Perez handed to Lipsky a set of car keys and a claim check to a car which contained four half-kilo bags of heroin (Tr. 116–19); that he had personal knowledge of the contents of the half-kilo bags because he had weighed and tested the heroin for purity (Tr. 119); that Pacelli summoned him to a discotheque where Lipsky saw the three partners—Pacelli, Perez and Bracer—seated together (Tr. 118); and that Perez gave Lipsky money to leave New York, to enable Lipsky to avoid arrest (Tr. 125–26).

Lipsky's testimony linking Perez to Pacelli and Bracer was corroborated through a number of sources. A drug enforcement agent testified that he had participated in a drug sale at Perez' and Pacelli's sporting goods store where cocaine was in open view when Perez walked in, glanced at the agent, gave a half nod of his head and smiled before leaving (Tr. 350–55). The agent's testimony concerning the sale at the sporting goods store mirrored Lipsky's account of the sale as told by Pacelli (Tr. 101–02). The Government also presented evidence to show, and appellant does not dispute, that Perez travelled to the Grand Canary Islands under a false name, where he met with co-conspirator Al Bracer. (GX 17; Tr. 336–39). Emily Flores, Perez' former girlfriend, testified that whenever Perez and Pacelli met at Perez' apartment for conversations, they would ask her to leave the room (Tr. 303–04); that Perez never told her what he did for a living (Tr. 331–32); and that she had personally seen Perez use cocaine (Tr. 315).

Although each item of evidence itself may not be dispositive proof that Perez was a co-conspirator, "such pieces of evidence are to be viewed not in isolation but in conjunction." *United States v. Geaney, supra,* 417 F.2d at 1121.

■ Appellant next argues that the district judge committed error when he did not make a specific *Geaney* finding as to Perez' participation in the conspiracy. We disagree. This circuit has recognized that where the record indicates it to be appropriate, an implicit *Geaney* ruling can be inferred in the trial judge's decision to receive the evidence and to deny a directed verdict of acquittal on the conspiracy charge. *See, e.g., United States v. Cambindo Valencia,* 609 F.2d 603, 631 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980); *United States v. Lyles,* 593 F.2d 182, 194 n. 15 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Ziegler, supra,* 583 F.2d at

80 n. 5. In light of the abundance of evidence linking Perez to the conspiracy, we infer that an implicit finding has been made.

■■ Appellant's claim that the admission of Pacelli's statements violated his right of confrontation under the Sixth Amendment is unavailing. In order to protect a defendant's right to challenge evidentiary statements when the declarant is unavailable, the judge must determine whether, in the circumstances of the case, the statement "bears sufficient indicia of reliability to assure the trier of fact an adequate basis for evaluating the truth of the declaration." *United States v. Puco,* 476 F.2d 1099, 1107 (2d Cir.) (On petition for rehearing), *cert. denied,* 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973). Further, "[i]n most cases the determination that a declaration is in furtherance of the conspiracy ... will decide whether sufficient indicia of reliability were present." *Id.* at 1107; *accord, United States v. Wright,* 588 F.2d 31, 38 (2d Cir.1978), *cert. denied,* 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979); *United States v. Mangan, supra,* 575 F.2d at 44. This is true because a declaration in furtherance of a conspiracy would be against the penal interest of the declarant. *Cf. United States v. Glasser,* 443 F.2d 994, 999 (2d Cir.1971).

■ It is clear that Pacelli's statement to Lipsky concerning the formation of the partnership was in furtherance of the charged conspiracy. Pacelli was imparting to Lipsky the composition of a partnership in which Lipsky was to act as a principal worker. In order to prepare Lipsky for his intended role, Pacelli had to reveal the identity of the others involved. Thus, we find Pacelli's statements to be in furtherance of the conspiracy, and conclude that the jury as triers of fact had an adequate basis for evaluating the truth of the declaration.

■ Appellant claims that under the Jencks Act he is entitled to a reversal because he was denied an unredacted version of an eight page letter Lipsky had written to Assistant United States Attorney Feffer. This claim is also to no avail. There is no indication that the Government deliberately misplaced the two missing pages. Moreover, the significance of the missing pages is minimal when weighed against the strength of the Government's proof. *See United States v. Grammatikos,* 633 F.2d 1013, 1019–20 (2d Cir.1980); *United States v. Miranda,* 526 F.2d 1319, 1326 (2d Cir. 1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). The Government's explanation that after a 10 year hiatus, while Perez was at large, the two missing pages could not be located, is plausible. We note that the remainder of the letter's contents was vigorously used by Perez' counsel in his attempt to impeach Lipsky's character. Appellant's counsel, during cross-examination of Lipsky, used the redacted version of the letter to expose Lipsky's prior perjuries and participation in a murder, as well as the preferential treatment Lipsky had received while incarcerated.

■ The appellant's remaining claims are without merit. First, he claims that the government attempted to improperly bolster Lipsky's credibility during its summation by referring to evidence which had been excluded at trial. The appellant did not object to the summation at trial; therefore, this court's inquiry is directed at whether the challenged argument amounted to a "flagrant abuse." *United States v. Perry,* 643 F.2d 38, 51 (2d Cir.1981); *United States v. Dibrizzi,* 393 F.2d 642, 645–46 (2d Cir.1968). The prosecutor's statement did not refer to excluded evidence but rather, to Lipsky's testimony that he had contacted the federal law enforcement authorities prior to corroboration of his allegations. We do not find this to be flagrant abuse. Second, the appellant objects to certain aspects of the jury charge. He claims that the district court committed prejudicial error by informing the jury as to the statutory purpose of the Comprehensive Drug Abuse Prevention Act, the dangers of a conspiracy, and the fact that co-conspirator Susan Weyl had previously pleaded guilty to conspiracy with Perez, Pacelli, Lipsky and others, when in fact she had not named Perez. This was not reversible error. A charge on statutory purpose is not an abuse

of discretion. *United States v. O'Connor,* 580 F.2d 38, 44 (1978). Moreover, appellant does not dispute the accuracy of the district judge's statement concerning the statutory purpose of the Act. The charge regarding the dangers of a conspiracy was given to convey to the jury the intricacies of a conspiracy conviction and the fact that a conspiracy can be viewed as a separate offense from the substantive charges. The trial judge's inadvertent reference to Perez' name while discussing Susan Weyl's plea was not met with objection by the defendant. Under these circumstances, Perez may not object to this portion of the charge on appeal. *See United States v. Head,* 546 F.2d 6, 7–8 (2d Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). Furthermore, the judge's error was remedied by the balance of the charge which instructed the jury that regardless of the other co-conspirators' guilt or innocence, they must independently determine whether Perez was a member of the charged conspiracy.

Judgment of conviction is affirmed.