**Paul HIGHTOWER, Petitioner,**

v.

**Walter R. KELLY, Superintendent, Attica Correctional Facility, Respondents.**

No. 85 Civ. 4012 (JES).

United States District Court, S.D. New York.

April 10, 1987.

As Amended May 6, 1987.

Abraham Hecht, Forest Hills, N.Y., for petitioner.

Robert Abrams, Atty. Gen. of N.Y., New York City, for respondents; Vida M. Alvy, Asst. Atty. Gen., of counsel.

SPRIZZO, District Judge.

In this action, petitioner Paul Hightower seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). This matter was referred to a Magistrate for a Report and Recommendation. The Magistrate recommended that the writ be denied and the action dismissed. *See* Report and Recommendation ("Report") at 1, 12. The Court has reviewed *de novo* petitioner's objections to the Magistrate's Report in accordance with 28 U.S.C. § 636(b) (1982). For the reasons set forth below, the Court concludes that the petition should be dismissed.

Petitioner was convicted in New York Supreme Court of conspiracy, criminal sale of a controlled substance, and criminal possession of a controlled substance after his alleged co-conspirator sold $10,000 worth of heroin to an undercover agent. *See* Report at 2–3. The facts concerning petitioner's conviction and subsequent appeal are fully set forth in the Magistrate's Re-

port and Recommendation, *see id.* at 2–7, and need not be repeated here.

The sole claim contained in Hightower's petition, which was filed *pro se*,[1] is that he was denied effective assistance of counsel on appeal. *See* Petition at 5. Petitioner's claim is based on the failure of his counsel to raise three related arguments on appeal: first, that incriminating hearsay evidence should have been suppressed; second, that had an allegedly suppressed statement been "raised" on appeal, it would have demonstrated that the prosecution failed to prove "any part" of the indictment; and third, that the indictment was based solely on inadmissable hearsay. *See id.* All of these arguments are based on the admission of hearsay statements made by an alleged co-conspirator. Petitioner's claim, broadly read, appears to be that his counsel failed to argue that the hearsay statements were admitted in the absence of sufficient independent evidence to establish a conspiracy and that their admission violated the Confrontation Clause. *See* Petitioner's Memorandum of Law and Exhibits ("Pet. Mem.") at 11–15.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his counsel made errors so serious that "counsel was not functioning as ... 'counsel' ...," *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and that petitioner was prejudiced by those errors— that is, that there is a reasonable probability that the errors affected the outcome of the proceeding, *see id.* at 694, 104 S.Ct. at 2068; *accord Kimmelman v. Morrison*, — U.S. —, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *Gulliver v. Dalsheim*, 739 F.2d 104, 107 (2d Cir.1984). In the instant case, as the Magistrate correctly noted, petitioner failed to demonstrate prejudice because all of the arguments petitioner claims his counsel should have raised on appeal were actually raised, either by counsel or by petitioner himself in his *pro se* brief to the Appellate Division. *See* Report

---

**1.** Hightower filed his petition *pro se* but obtained counsel prior to filing his objections to     the Magistrate's Report and Recommendation.

at 8–12. Indeed, the brief prepared by petitioner's counsel squarely presented the appellate court with the issue of whether the prosecution had established a sufficient predicate for the admission of the hearsay statements of the alleged co-conspirator.[2] Counsel's failure to present the issue precisely as petitioner wished does not constitute ineffective assistance of counsel. *Cf. Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983) (court should not "second guess [appellate counsel's] reasonable professional judgments....")[3].

Apparently aware that there is no merit to the claims which were initially set forth in his petition, petitioner in his objections to the Magistrate's Report has greatly expanded upon those claims. *Compare* Petition at 5 *with* Petitioner's Memorandum of Law and Objections to Report ("Objections") at 11. Thus, in petitioner's objections to the Magistrate's Report and Recommendation, which were prepared by counsel retained after the petition was filed, it is urged for the first time that the writ should be granted because the admission of the hearsay statements referred to in the petition violated petitioner's constitutional right of confrontation. This claim is based upon the alleged failure of the prosecution to prove the unavailability of the non-testifying co-conspirator at trial. *See* Objections at 11–18.

▇ The Court has serious doubts as to whether a petitioner may properly raise new grounds for a writ of habeas corpus for the first time in objections to a Magistrate's Report. In any event, these claims are equally without merit. Although the Confrontation Clause requires that hearsay statements must bear "indicia of reliability" sufficient to afford the fact finder a satisfactory basis for evaluating the truth of the statements, *see Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), the establishment of a *prima facie* case of conspiracy will in most instances provide sufficient indicia of reliability for the admission of a co-conspirator's hearsay statement, *see United States v. Puco,* 476 F.2d 1099, 1104 (2d Cir.1973) (on petition for rehearing); *accord United States v. Perez,* 702 F.2d 33, 37 (2d Cir.) (per curiam), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2457, 77 L.Ed.2d 1336 (1983). In this case, the non-hearsay evidence clearly was sufficient both under New York and federal law to establish the requisite *prima facie* conspiracy between petitioner and the out-of-court declarant. *See United States v. Geaney,* 417 F.2d 1116, 1120–21 (2d Cir.1969); *People v. Salko,* 47 N.Y.2d 230, 237–40, 391 N.E.2d 976, 417 N.Y.S.2d 894, 898–900 (1979).[4] This is especially

---

**2.** The Court's conclusion that petitioner's counsel on appeal addressed the issue of whether a *prima facie* case of conspiracy had been established clearly disposes of petitioner's first and third arguments. Petitioner's second argument is that his counsel failed to "raise" on appeal a hearsay statement allegedly suppressed at trial, and that had his counsel "raised" this statement, it would have demonstrated that the People failed to prove "any part" of the indictment against him. *See* Petition at 5. This claim also lacks merit. First, it does not follow from the fact that merely because one hearsay statement may have been suppressed, the conspiracy charged had not been proven. Indeed, as noted *infra,* the non-hearsay evidence adduced was more than sufficient to establish a *prima facie* case of conspiracy.

In any event, petitioner's counsel argued the insufficiency of the evidence on appeal, and the Constitution does not require counsel to present an issue precisely as his client would have liked. Moreover, it is unclear whether the statement at issue was actually suppressed at trial. *See* Tr. at 31–32; *see also* Report at 10.

**3.** As noted *supra,* petitioner filed a supplemental *pro se* brief which presented the appellate court with the arguments he alleges his counsel failed to make. *Compare* Pet.Mem. at 11–15, 16–17, 21–22 *with* Defendant-Appellant's [*Pro Se* ] Brief to the Appellate Division, First Department at 4–7.

**4.** In determining that a *prima facie* case of conspiracy had been established as a predicate for the admission of hearsay statements of Leonard Gaines, the alleged co-conspirator, the trial court correctly relied on three types of evidence. *See* Tr. at 266–69. First, the court relied on wiretap tape recordings of conversations between Gaines and the undercover agent and between Gaines and the petitioner. These tapes establish that after making tentative arrangements with the undercover agent, Gaines contacted petitioner to ascertain whether the arrangements were satisfactory to petitioner, and that when petitioner suggested an alternative time for the meetings, Gaines responded by contacting the undercover agent to change the time

true since there is no reason to question the accuracy of the hearsay statements made by petitioner's co-conspirator to an undercover agent believed to be an ordinary purchaser. *See Puco, supra,* 476 F.2d at 1104. Moreover, contrary to the assertions contained in petitioner's objections, *see* Objections at 15–17, the Confrontation Clause does not require that the unavailability of a non-testifying co-conspirator be established before his out-of-court statements may be admitted into evidence as an exception to the hearsay rule. *See United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 1124, 89 L.Ed.2d 390 (1986).

The Court concludes that petitioner's claim of ineffective assistance of counsel must fail because petitioner has failed to demonstrate that counsel was ineffective, and in any event, has failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068. Not only was the appellate court fully appraised of the substance of petitioner's arguments but, as noted *supra,* those arguments were also totally without merit and could not have affected the outcome of the appeal regardless of the form in which they were raised. It follows that the petition must be dismissed.

It is SO ORDERED.

---

of their meetings. *See* Pet.Mem. at 4–5; Report at 3–4; *see also* Report at 6 (additional taped conversations between Gaines and petitioner).

In addition to the tape recordings, the trial court considered testimony that Gaines was observed entering the petitioner's residence and that the two of them left together shortly before Gaines met with the undercover agent to postpone the sale. *See* Tr. at 160, 259–60. Finally, the Court considered testimony regarding "the [petitioner's] participation in the events of April 7, 1976." *Id.* at 268. The state introduced testimony that on that day, Gaines met petitioner at the latter's residence and the two left together in separate automobiles. *See* Tr. at 213–14. According to this testimony, Gaines drove to the

prearranged meeting place and consummated the sale of heroin to the undercover agent. *See id.* at 112–13, 139–40. During the transaction, petitioner was observed standing next to his car, which was parked diagonally across the street from the agent's car, where the sale was taking place. *See id.* at 115–16, 137–38. After the sale, both Gaines and petitioner drove their cars to petitioner's residence and entered together. *See id.* at 168–69.

This evidence, taken as a whole, is clearly a sufficient predicate for the introduction of out-of-court statements made by Gaines in furtherance of the conspiracy. *See People v. Salko,* 47 N.Y.2d 230, 237–40, 391 N.E.2d 976, 980–82, 417 N.Y.S.2d 894, 898–900 (1979).